UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ASHLEY DURHAM,

              Plaintiff,

v.

BANNER HEALTH, et al.,

              Defendants.

No. 2:24-cv-00920-DJC-DMC

ORDER

Plaintiff Ashley Durham brings this first amended class action complaint against Defendants Banner Health and BH Corporate Office alleging violations of certain California Labor Code provisions and California's Unfair Competition Law. Defendants now move to dismiss for lack of subject matter jurisdiction and failure to state a claim. Defendants also seek certification of this Court's prior ruling for interlocutory appeal under 8 U.S.C. § 1292(b). For the reasons explained below, the Motion to Dismiss is GRANTED in part and DENIED in part. The request to certify is DENIED.

////

////

////

1

**BACKGROUND**

## I.  Procedural History

Former plaintiff Vincent Kelly initiated this class action on February 16, 2024, in the Superior Court for the County of Lassen, (Compl. (ECF No. 1-1)), and Defendants removed the matter to this Court shortly thereafter, (ECF No. 1).  On October 29, 2025, Kelly filed a motion seeking leave to amend the Complaint and substitute a new class representative.  (Mot. to Amend (ECF No. 55).)  After full briefing and oral argument, the Court granted the motion for leave to amend on December 18, 2025.  (ECF No. 64.)  Upon the filing of a first amended complaint ("FAC") the next day, Plaintiff Ashley Durham became the new class representative.  (ECF No. 65.)  Defendants thereafter moved to dismiss the FAC, Plaintiff opposed, and Defendants replied.  (MTD (ECF No. 69); Opp'n (ECF No. 80); Reply (ECF No. 82).)

## II.  Factual Background

Plaintiff worked for Defendants as a non-exempt employee during the relevant and statutory periods.  (FAC ¶ 21.)  Defendant Banner Health is an Arizona corporation doing business in the State of California.  (*Id*. ¶ 7.)  On behalf of a putative class, Plaintiff asserts several causes of action under the California Labor Code: 1) failure to provide meal periods; 2) failure to provide rest periods; 3) failure to pay hourly wages and overtime; 4) failure to pay proper sick pay; 5) failure to provide accurate written wage statements; 6) failure to timely pay all final wages; 7) failure to indemnify; as well as an eighth cause of action under the California Business and Professions Code: 8) unfair competition.  (*See generally* FAC.)

**LEGAL STANDARDS**

A party may move to dismiss for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  The motion may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

2

1988)).  The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party."  *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)).  If the complaint's allegations do not "plausibly give rise to an entitlement to relief[,]" the motion must be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of elements do not alone suffice.  *See id.*  This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense."  *Id.* at 679.

## DISCUSSION

Defendants assert two bases for dismissal and request this Court certify for interlocutory appeal its prior Order granting Plaintiff leave to amend.  (*See generally* MTD.)

Defendants contend *first,* that Plaintiff's five-month delay in moving to substitute the new class representative divested this Court of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1); *second*, that the Court's prior ruling granting leave to amend (ECF No. 64) presents a controlling question of law suitable for interlocutory appeal under 28 U.S.C. § 1292(b); and *third*, that the FAC otherwise fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The Court will address these issues in order.

**III. Subject Matter Jurisdiction and Request for Interlocutory Appeal**

   **A. Rule 12(b)(1)**

The Court denies Defendants' Motion to Dismiss under Federal Rule 12(b)(1) for lack of subject matter jurisdiction.  The Court rejects the argument that Mr. Kelly's decision to withdraw as class representative or the timing of the motion to substitute a new class representative somehow mooted this case.

Defendants assert that dismissal under Rule 12(b)(1) is appropriate because Plaintiff purportedly delayed, for five months, in identifying a new class representative and moving to amend.  (*See* MTD and Reply.)  Defendants contend that even a gap of two months since Mr. Kelly expressed his desire to withdraw was "more than enough time to divest the Court of jurisdiction."  (Reply at 4.)  As supporting authority, Defendants cite numerous cases in which a motion to substitute a new class representative was filed mere weeks after the original class representative expressed a desire to withdraw.  (*Id.* at 2–5.)

"Although the Ninth Circuit has not directly addressed the issue, it has suggested that pre-certification substitution is allowed when the named plaintiff's claims survive."  *Castillo v. United Rentals (N.A.), Inc.*, No. 2:17-cv-01573-JLR, 2018 WL 3429936, at *3 n.3 (W.D. Wash. Jul. 16, 2018) (citing *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880–81 (9th Cir. 1999).  Here, there is no evidence that Mr. Kelly has settled or dismissed his claims, thus his claims remain live.  While Mr. Kelly decided he no longer wished to assume the duties of a class representative, the fact remains that at no time was there a lack of case or controversy between him and Defendants.

Further, the Court declines to impose a requirement that there be an immediate substitution of a new class representative to preserve Article III jurisdiction. *See, e.g., Rieken v. Timberland Bank*, 639 F. Supp. 3d 1128 (W.D. Wash. 2022); *Aguilar v. Boulder Brands*, Case No. 3:12-cv-01862-BTM-BGS, 2014 WL 4352169 (S.D. Cal. Sept. 2, 2014).  In *Aguilar*, as in this case, the named representative of the purported class sought to withdraw as class representative due to health issues, and Plaintiff

requested leave to amend to name a new class representative. *Aguilar*, 2014 WL 4352169, at *5.  In determining whether there was Article III jurisdiction, the Court noted that Article III "'requires that an actual, ongoing controversy exist at all stages of federal court proceedings.'" *Id*. at *6 (quoting *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011)).  As that court noted, however, the mootness doctrine is applied "flexibly, particularly where the issues remain live, even if the plaintiff's personal stake in the outcome has become moot," and that such flexibility applies pre-class certification. *Id*. (cleaned up).  Given that the previously existing named plaintiff "ha[d] not settled her dispute with Defendants, [but] merely [sought] to join the putative class and not serve as its representative due to health issues" there was "a very real case or controversy sufficient to support jurisdiction . . . ." *Id*. at *8.

To be sure, the court in *Aguilar* noted that there was a "brief interim" between the request to withdraw and the substitution of a new plaintiff, and that where there is a decision of the named representative to withdraw as class representative "Plaintiffs have a short amount of time to substitute the plaintiff and save their case." *Id*.  Seizing on this language, some district courts have suggested that "the only circumstances under which a named plaintiff is entitled to substitute prior to class certification is when that plaintiff is both capable of and 'intends to become part of the class, such that her claims persist and the case or controversy remains active, and when plaintiff's counsel is able to produce a proposed substitute immediately." *Rieken*, 639 F. Supp. 3d at 1134 (*quoting and citing to Castillo*, 2018 WL 3429936, at *3 and *Aguilar*, 2014 WL 4352169, at *9) (emphasis added).[1]  It is this "immediately" language on which Defendants seize to argue that jurisdiction lapsed in this case.

To the extent some district courts have adopted this immediacy language, the Court declines to follow their lead.  The first part of the requirement from *Rieken*

---

[1] *Rieken* is factually distinguishable from this case in an important way – the named Plaintiff in that case never possessed standing to bring her claims, as a bankruptcy trustee was the real party in interest. 639 F. Supp. 3d at 1133–34.

5

quoted above – that plaintiff's claims persist and the controversy remain active – is certainly mandated by Article III, which requires a live case or controversy at all stages of the proceedings.  And that requirement is met here: Mr. Kelly remains a part of the class and continues to have a live controversy with respect to the Defendants.  As to the second part – that a new class representative be immediately identified once a Plaintiff indicates a desire to withdraw as class representative (but not from the class) – that requirement does not appear to find any support in Article III.

If there were in fact a lack of a case or controversy as soon as a class representative decided she did not want to continue as class representative, then the immediacy requirement would truly need to be immediate; yet courts imposing an immediacy requirement generally provide at least a few weeks to amend the complaint to identify a new representative.  *See, e.g., Aguilar*, 2014 WL 4352169, at *11 (providing two weeks).  Counsel for Defendants appeared to recognize this at oral argument, agreeing that if the request of a named representative to withdraw from being named class representative were enough to divest the Court of jurisdiction, then it should not matter how long it takes to substitute a new representative, since Article III jurisdiction must attach at <u>all stages</u> of the proceedings.  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).  With respect, in this Court's view there cannot be a "jurisdictional void," *Aguilar*, 2014 WL 4352169 at *8, of <u>any</u> length, no matter how short lived, or the Court would be deprived of jurisdiction.  While the timeliness of the substitution is certainly relevant for purposes of Federal Rules of Civil Procedure 15 and 16 to establish diligence, in a case such as this where there has consistently been a case or controversy between the current class representative and Defendants, the Court does not believe Article III requires an "immediate" substitution of the named representative.

Defendants' argument is also inconsistent with Ninth Circuit caselaw making clear that even pre-certification "mooting the putative class representative's claims will not necessarily moot the class action."  *Pitts*, 653 F.3d at 1090.  "To the extent that

defendants may avoid a class action by 'picking off' the named plaintiffs, the class claims are 'inherently transitory' and evade review, making an exception to the mootness rule appropriate." *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1143 (9th Cir. 2016) (quoting 5 James Wm. Moore, Moore's Federal Practice § 23.64[1][b] (3d ed. 2016)).  Surely, if there was a live case or controversy in a putative class action where the claims of the class representative had been mooted, there remains a live case or controversy here where Mr. Kelly at all times retained a live claim against Defendants.

Finally to the extent that Defendants argue that under Rule 15 the Court should not have granted leave to amend, the Supreme Court has been clear that the determination as to "the grant or denial of an opportunity to amend is within the discretion of the District Court[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962).  In making that determination, the Supreme Court has instructed district courts to consider certain factors "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice . . . futility of amendment, etc." *Id.*  Defendants' immediacy argument would eviscerate this discretionary analysis.  This Court acted within the discretion afforded by the Rules of Civil Procedure when it granted amendment of the Complaint to add Ms. Durham as the new class representative.  The Court found there was good cause under Rule 16 as Plaintiff had been sufficiently diligent in flagging the prior class representative's desire to withdraw as soon as it came up and "came to court pretty quickly thereafter."  (Tr. (ECF No. 84) 11:15–16.)  Moreover, under Rule 15, the Court discussed the effect of the proposed amendments and ultimately concluded there was no substantial prejudice to Defendants and that amendment was not futile (*see* Tr. 11:22–23; 13:7–14).  The Court sees no need to revisit that determination here.

Defendant's Motion to Dismiss for lack of subject matter jurisdiction is therefore DENIED.

**B. Request to Certify**

The Court also declines to certify its prior ruling for interlocutory appeal under 28 U.S.C. § 1292(b).  A district court may certify an appeal of an interlocutory order only if three factors are present: (1) the issue to be certified involves a "controlling question of law," (2) there is "substantial ground for difference of opinion" on the issue, and (3) it is likely that an interlocutory appeal will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  These requirements are jurisdictional, and the party seeking certification bears the burden of demonstrating that they have been satisfied.  *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2009).

Defendants cannot make this showing, which fails at the second prong.  As explained above, given clear Ninth Circuit authority that mooting the claim of the named representative of the putative class does not moot the class action, the Court does not find that there is substantial ground for difference of opinion as to whether the decision of a named representative to withdraw as class representative – while retaining a claim against Defendants – moots the class action entirely.  Accordingly, Defendants' request to certify is DENIED.

## IV. Failure to State a Claim under Federal Rule 12(b)(6)

### A. Failure to Provide Meal and Rest Periods (Counts 1 and 2)

Plaintiff's first two causes of action allege that Defendants failed to provide meal and rest periods.  (FAC ¶¶ 22, 25–27, 38–63.)  The California Labor Code requires employers to provide off-duty meal periods of at least 30 minutes for each day worked of five hours or more, and to provide a second meal period of at least 30 minutes for each day worked of 10 hours or more.  Cal. Labor Code §§ 512(a), 226.7.  California law also requires employers to provide off-duty rest periods to Plaintiffs and putative class members.  *Id*. § 226.7.

Defendants assert that Plaintiff fails to plead sufficient facts to undergird her meal and rest break claims.  (MTD at 18–20.)  Defendants point out that Plaintiff does

not identify how she was denied an opportunity to take a meal or rest break on any particular day, that she does not identify who denied her a meal or rest break, and that she does not identify a single instance of, or workweek with, a violation. (*Id.* at 19.)  In rebuttal, Plaintiff contends Defendants misstate the law, "read the FAC too narrowly," and ignore the specific instances of noncompliant breaks identified in the FAC as well as supporting allegations as to how Defendants prevented break opportunities.  (*See* Opp'n at 21–22.)  Plaintiff points to paragraphs 25, 26, and 27 in the FAC as examples of specific factual allegations.  (*Id.*)  As explained below, the Court agrees with Defendants.

In the FAC, Plaintiff alleges that "Defendants had a common policy and practice of systemically failing to pay Plaintiff proper wages . . . . Specifically, Plaintiff and Class Members were required to perform work during unpaid meal periods, when such meal periods were provided, including having to carry and monitor their company-issued radios."  (FAC ¶ 22.)  Later on, the FAC reiterates that "Plaintiff and Class Members were regularly denied meal periods altogether" and that "due to understaffing, heavy workloads, and the uncompensated pre-shift duties, Plaintiff and Class Members were denied the opportunity to take their meal periods prior to the completion of their fifth hour of work, and second meal periods prior to the completion of their tenth hour of work. . . . Plaintiff and Class Members were denied the opportunity to take uninterrupted meal periods of at least 30 minutes . . . and were regularly required to perform work-related activ[ities] during meal periods, including having to carry and monitor their company-issued radios during meal periods and rest breaks."  (FAC ¶ 25.)

The following paragraphs provide three reasons for the lack of meal and rest periods: first, Defendants had a "policy of not scheduling each meal [or rest] period as part of each work shift"; second, there was "no formal written . . . policy that encouraged employees to take their meal [or rest] periods, or that advised Class Members of their meal and rest period rights"; and third, Defendants had a practice of

9

"requiring putative class members to continue working through their meal and rest periods due to the excessive workload."  (FAC ¶¶ 26, 27, 46, 49, 60.)  As to rest periods, Defendants also had a "policy and practice of requiring Plaintiff and Class Members to remain on the premises during their rest breaks."  (*Id.* ¶ 27, 60.)

The parties dispute the degree of granularity required to state a claim under Rule 8.  The Ninth Circuit has addressed the degree of specificity required to state a claim under the Fair Labor Standards Act.  *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 640 (9th Cir. 2014, *as amended* (Jan. 26, 2015).  While *Landers* addressed pleading requirements for minimum wage and overtime claims under that statute, federal courts have applied *Landers'*s analysis to California Labor Code claims.  *See, e.g.*, *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1006 (N.D. Cal. 2016) (citation omitted) (applying *Landers* to Labor Code minimum wage and overtime claims); *Guerrero v. Halliburton Energy Servs.*, No. 1:16-cv-01300-LJO-JLT, 2016 WL 6494296, at *6 (E.D. Cal. Nov. 2, 2016) (applying *Landers* to Labor Code meal and rest break claims).

While there is some variation among district courts in how *Landers* is applied, this Court has previously held that "while Plaintiff need not allege each violation by Defendants, consistent with *Landers*, Plaintiff must plausibly allege he was denied meal and rest breaks in *some* specific instances."  *Benge v. Office Depot, LLC*, No. 2:24-cv-00749-DJC-SCR, 2025 WL 373501, at *7 (E.D. Cal. Feb. 3, 2025) (emphasis added); *see also Delgado v. Oldcastle Infrastructure, Inc.*, 2025 WL 1951601, at *4 (E.D. Cal. Jul. 16, 2025) ("[T]here must be some plausible allegations as to specific instances of denial of meal or rest breaks.").  Other courts in this district have held similarly.  *See Guerrero*, 2016 WL 6494296, at *5 (stating "[t]he requirement in *Landers* that a plaintiff must plead a specific instance of alleged wage and hour violations also applies to claims about missed meal and rest periods."); *Benyamin v. Topgolf Payroll Servs., LLC*, 2023 WL 4054543 (E.D. Cal. Jun. 16, 2023) (same).  The Court sees no reason to depart from this authority now.

Here, while Plaintiff's allegations regarding Defendants' policies and practices describe the *ways* in which the meal and/or rest breaks were violated, the FAC lacks any specific example of such violation in contravention of *Landers* and this Court's prior rulings.  Plaintiff's cited authority is distinguishable.  First, in *Perez v. Island Hospitality Management III, LLC*, while the court found the allegation that defendants "regularly" violated the Labor Code provisions sufficiently specific to satisfy *Landers*, it relied on much more specific allegations than are present here.  No. 18-CV-04903-DMG-JPRx, 2019 WL 3064113 (C.D. Cal. Feb. 8, 2019).  Specifically, in *Perez*, the plaintiff alleged that he was "frequently interrupted by hotel guests and asked work-related questions" which occurred "approximately three to four times per week"; that because he was not able to take a meal break until he was relieved of his duties he "took a meal period after the fifth hour of work approximately two days per week"; and that his timesheets would reveal "that he worked 26 shifts during which the first required meal period was recorded after the fifth hour of work (in violation of section 512(a)) and an additional 30 shifts during which a meal period of less than 30 minutes was recorded (in violation of section 226.7)."  2019 WL 3064113, at *4.  While the Court agrees with the observation in *Perez* that requiring "plaintiffs to allege specific dates, actual (or approximate) amounts of wages, corresponding violations, and other data giving rise to their claims would rachet up the general pleading standard" beyond what Rule 8 requires, *id.* at *3, the plaintiff's adequately pled allegations in *Perez* illustrate the level of detail required under *Landers*.

Similarly, in *Morrelli v. Corizon Health, Inc.*, the court found plaintiffs' allegation that, pursuant to policy, there was only one nursing professional on staff "on any particular shift" to be adequately alleged because it "meant Plaintiffs were not fully relieved of their duties during break and meal times[.]"  No. 1:18-cv-1395-LJO-SAB, 2019 WL 918210, at *9 (E.D. Cal. Feb. 25, 2019).  Plaintiffs also there alleged that the defendants "implemented a policy and practice prohibiting the Plaintiffs and class members from leaving the work place during statutorily required off-duty meal and

rest break time." *Id*. at *8.  Significantly, the Complaint there included an allegation that "Defendant's contract with the county facility required it to always maintain at least one nursing professional on site to respond to emergencies and health care needs of the facility's inmates," *id.* at *9, which lent plausibility to their claim that the policy of failing to leave the workplace resulted in missed meal and rest breaks.

Similarly distinguishable is *Perez v. DNC Parks & Resorts at Asilomar, Inc.*, in which the court concluded plaintiffs stated meal and rest break claims because they provided "specific instances" where such breaks were not fully taken.  No. 1:19-cv-00484-DAD-SAB, 2022 WL 411422, at *5 (E.D. Cal. Feb. 10, 2022).  And, last, in *Parsittie v. Schneider Logistics, Inc.*, the Ninth Circuit held plaintiff had stated a claim for meal- and rest-break violations because he alleged sixty-five days in which he was discouraged from leaving the facility during a meal period.  859 Fed. App'x 106, 108 (9th Cir. 2021) (unpublished).  Against the weight of this authority, Plaintiff's meal and rest break claims are not adequately pled.

Thus, the Court GRANTS Defendants' motion to dismiss the first and second causes of action with leave to amend.

### B. Failure to Pay Hourly Wages and Overtime (Count 3)

In Count 3, Plaintiff alleges that Defendants failed to pay her and the putative class their minimum wages and/or overtime.  (FAC ¶¶ 22–24, 64–84.)

As with the meal- and rest-break claims, the parties disagree on whether Plaintiff must plead a specific instance of an overtime violation or failure to pay hourly wages.  (MTD at 20; Opp'n at 17.)  Plaintiff asserts that she need only allege facts supporting a plausible inference of such a violation and relies on the Ninth Circuit's unpublished decision in *Boon v. Canon Business Solutions, Inc.*, 592 Fed. App'x 631 (9th Cir. 2015), for the principle that so long as she has "identified tasks for which [s]he was not paid" and alleges that she "regularly worked more than eight hours in a day and forty hours in a week," she has stated a claim.  (Opp'n at 18–19.)  Plaintiff further contends that she has identified a typical work schedule and alleged "facts

demonstrating there was at least one workweek in which they worked an excess of forty hours and were not paid overtime wages." (*Id.* at 20 (quoting *Landers*, 771 F.3d at 646).) The Court disagrees.

*Boon* cannot be read without reference to *Landers*. In *Boon*, the Ninth Circuit reversed a district court's dismissal of an overtime claim for failure to state a claim because the court improperly required the plaintiff to include "the amount of wages accrued and unpaid at the time the employment relationship terminated," approximate "the hours worked for which these wages were not received," and "estimate as to how much uncompensated time was spent, how often, and at what rate." 592 Fed. App'x at 632. The Court in *Boon* concluded that such detailed allegations were not consistent with *Landers*. *Id*. *Boon* also explicitly applied *Landers*'s holding that a plaintiff must allege facts demonstrating that "there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Id*. Here, Plaintiff's FAC does not meet the *Landers* test because it does not provide factual allegations for any particular workweek. Instead, the FAC asserts the following:

> Defendants had a common policy and practice of systemically failing to pay Plaintiff and Class Members proper wages and overtime for all hours worked, at the proper rates of pay. . . . Plaintiff and Class Members were required to make and respond to work-related calls off-the-clock, including scheduling calls, for which no wages were paid, and open the department including turning on lights and computer before being able to clock in. Next, Plaintiff and Class Members were required to undergo Covid-19 related testing off-the-clock prior to the start of their shift and when returning from a meal break. Furthermore, Plaintiff and Class Members were required to wait in line for a timeclock to become available for them to clock in. Lastly, Plaintiff and Class Members were required to perform work off-the-clock after clocking out for the day, including assisting other employees with computer systems, for which no wages were paid.
>
> . . . This uncompensated time caused Plaintiff and Class Members to work in excess of eight (8), ten (10) and/or twelve (12) hours a day and/or forty (40) hours a week, entitling Plaintiff and Class Members to minimum and overtime wages, which they were systemically denied.

(FAC ¶¶ 22–23.)  While these contentions give some color and detail to the types of tasks Plaintiffs were allegedly required to do off the clock, they do not plausibly allege any specific workweek or period *when* such activities took place.  The Complaint also lacks allegations concerning Plaintiffs' typical work schedule or the approximate number of hours worked during any specific period or the amount of time spent on uncompensated tasks.  *See Benge*, 2025 WL 373501, at *4 (comparing cases and concluding overtime and minimum wage claims were inadequately pled).  So too with the minimum wage claim, for which Plaintiff does not plead any specific facts indicating how many hours they worked without compensation or the hourly wages paid.  *Id.* at *5; *see also Boyack v. Regis Corp.*, 812 Fed. App'x 428, 430 n.1 (9th Cir. 2020) ("Although *Landers* does not require plaintiffs plead 'with mathematical precision' the number of hours they worked in a week, *Landers* does require plaintiffs to allege they worked several hours without being paid minimum wages, which Appellants failed to do."); *see also Tavares v. Cargill Inc.*, No. 1:20-cv-0679-JLT-SKO, 2019 WL 2918061, at *3–4 (E.D. Cal. Jul. 8, 2019) (collecting cases and finding dismissal appropriate where plaintiff failed to plausibly allege facts supporting a conclusion that off-the-clock work should have been compensated as overtime).  Thus, the Court GRANTS Defendants' Motion to Dismiss Count 3 with leave to amend.

### C.  Failure to Pay Proper Sick Time (Count 4)

In Count 4, Plaintiff alleges that Defendants failed to pay proper sick pay in accordance with California law.  (FAC ¶¶ 37, 85–89.)  Labor Code § 246 provides for sick pay.  Defendants contend that Labor Code § 246 does not provide for a private right of action, while Plaintiff disputes that it does.

The Court concludes that there is no private right of action to enforce a violation of Labor Code § 246 directly.  *See Reyes v. Costco Wholesale Corp.*, No. 2:24-cv-00300-KES-HBK, 2024 WL 3105624, at *7 (E.D. Cal. Jun. 24, 2024) (granting motion to dismiss a "direct" sick pay claim under Labor Code 246 but permitting a waiting time penalties claim).  However, as discussed more fully below,

"unpaid or underpaid sick pay wages are recoverable through Labor Code section 203" as waiting time penalties.  *Mendieta v. Williams Scotsman, Inc.*, No. 5:24-cv-02090-MWF-SP, 2025 WL 104095, at *8 (C.D. Cal. Jan. 15, 2025).

Accordingly, because amendment of this claim would be futile, Defendants' Motion to Dismiss Count 4 for failure to pay proper sick pay is GRANTED with prejudice.

### D. Failure to Provide Accurate Wage Statements and Timely Pay Final Wages (Counts 5 and 6)

In Counts 5 and 6, Plaintiff alleges Defendants failed to provide accurate wage statements and timely pay final wages.  (FAC ¶¶ 29–36, 90–107.)  California law requires employers to provide their employees with written wage statements listing gross and net wages earned, hourly pay rates, hours worked, and other employment-related information.  Lab. Code § 226.  California law also requires prompt payment of final wages to discharged employees and provides penalties for failure to comply with those provisions.  *See* Lab. Code §§ 201–203.

Plaintiff acknowledges that her wage statement claims are strictly derivative and based upon the allegations of the underlying wage, overtime, meal, and rest break claims. (Opp'n at 25.)  Because the Court has already dismissed these prior claims, Defendant's Motion to Dismiss Counts 5 and 6 for failure to provide accurate wage statements and timely final pay based on these claims is GRANTED with leave to amend.

To the extent Count 6 is based on unpaid sick leave, courts in this circuit have found that while a claim under Labor Code § 246 for sick pay cannot be pursued directly, a waiting time penalties claim may be sustained.  *See Reyes*, 2024 WL 3105624, at *7 (holding that an employee may recover waiting time penalties for used sick leave pay that the employer failed to timely pay following the employee's termination); *Ismail v. Am. Airlines, Inc.*, No. 2:22-cv-01111-DMG-JPRX, 2023 WL 5504932, at *5 (C.D. Cal. Jul. 14, 2023) (finding that plaintiff could seek waiting time

15

penalties for used sick pay); *Flores v. Dart Container Corp.*, No. 2:19-CV-00083-WBS-EFB, 2020 WL 2770073, at *3 (E.D. Cal. May 28, 2020) (finding paid sick leave constitutes wages for which a plaintiff can recover waiting time penalties). Accordingly, while Plaintiff *may* state a claim for waiting time penalties for used sick leave pay purportedly not paid following her discharge, the FAC lacks any allegations that Plaintiff has taken sick leave for which she has not been paid.  *See Flores*, 2020 WL 2770073, at *3 (denying motion to dismiss because plaintiff alleged she took sick leave and "defendants owe plaintiff accurate payment of sick leave already taken").

Accordingly, Defendants' Motion to Dismiss Count 6 for waiting time penalties as to unpaid sick pay is GRANTED with leave to amend.

### E.  Failure to Indemnify (Count 7)

Plaintiff does not provide any argument in support of her failure to indemnify claim.  (Opp'n at 22.)  Thus, the Court GRANTS the Motion to Dismiss as to Count 7 with leave to amend.

### F.  Unfair Competition (Count 8)

Plaintiff's final claim is for violation of California's Unfair Competition Law ("UCL").  (FAC ¶¶ 113–132.)  California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 et seq., defines "unfair competition" as including "any unlawful, unfair or fraudulent business act or practice."  Plaintiff specifically alleges that her unfair competition claim is based upon the meal period, rest break, overtime/minimum wage, and sick leave claims.  (*Id.* ¶ 117.)  She seeks temporary, preliminary, and permanent injunctive relief, restitution, and declaratory relief.

Employees can bring claims against their employers under UCL for restitution of unpaid earned wages.  *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 611 (N.D. Cal. May 2, 2022) (citation omitted).  As previously noted, because Plaintiff has not successfully alleged a violation of California's wage and hour laws as to her overtime/minimum wage, meal and rest break claims, she cannot state a claim for an unfair business practice.  *See Lopez v. Wendy's Int'l, Inc.*, No. 5:11-cv-00275-TJH-JC,

2011 WL 6967932, at *12 (C.D. Cal. Sept. 19, 2011) (dismissing derivative UCL claim based upon insufficiently pled wage and hour claims). However, as the Court grants Plaintiff leave to amend these particular claims, leave to amend the UCL claim is therefore appropriate.

As to the sick leave claim, Plaintiff has not adequately alleged that she lacks an adequate remedy at law to make restitution under section 246 for her unpaid sick wages necessary. The Ninth Circuit has held that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL . . . ." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). There is no allegation in the complaint that Plaintiff lacks a remedy at law, such that the UCL claim must be dismissed with leave to amend.

Thus, the Court GRANTS the Motion to Dismiss as to Count 8 with leave to amend.

### CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT Defendant's Motion to Dismiss (ECF No. 69) is GRANTED in part and DENIED in part as follows:

1. Counts 1, 2, 3, 5, 6, 7 and 8 of the First Amended Complaint are DISMISSED with leave to amend;

2. Count 4 for sick leave pay is DISMISSED with prejudice; and

3. Defendants' Motion to Dismiss is otherwise DENIED.

4. Plaintiff has 21 days from the docketing of this Order to file a Second Amended Complaint. Defendants will have 21 days after the docketing of the Second Amended Complaint to file their next responsive pleading.

IT IS SO ORDERED.

Dated:   **May 29, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

17